IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**ROY HOLMES, TINA ALEXANDER,**                                  **PLAINTIFFS**
**and PATRICK NORRIS, and MELISSA GARNER,**
**Each individually and on Behalf of All**
**Others Similarly Situated**

**vs.**                                  Case No. 4:20-cv-191-DPM

**STETSON COURIER, INC.**                                  **DEFENDANTS**
**and JOHN STETSON**

## RESPONSE IN PARTIAL OPPOSITION TO MOTION FOR COSTS AND ATTORNEYS' FEES AND BRIEF IN SUPPORT

Defendants Stetson Courier, Inc. and John Stetson, (collectively, Defendants), by and through their attorneys, ROSE LAW FIRM, A PROFESSIONAL ASSOCIATION, and for their Response in Partial Opposition to Plaintiffs' Motion for Costs and Attorneys' Fees, state:

### I.        INTRODUCTION

On October 27, 2023, Plaintiffs filed their Motion for Costs and Attorneys' Fees and Brief in Support (Plaintiffs' Motion), requesting the Court award Plaintiffs fees and costs in the amount of $123,462.78. ECF Nos. 141–142. In addition to the arguments presented in Plaintiffs' Motion, Plaintiffs rely on Sanford Law Firm, PLLC's (SLF) billing spreadsheet, the declaration of Attorney Josh Sanford, and SLF's costs invoice, to support their costs and fees request. *See* ECF No. 141–1, 141–2, 141–3. For the reasons explained in this Response, Defendants respectfully request that the Court grant in part and deny in part Plaintiffs' Motion.

1

## II.   BACKGROUND

Plaintiffs Roy Holmes, Tina Alexander, Patrick Norris, and Melissa Gardner (Named Plaintiffs) initiated their lawsuit against Defendants on February 25, 2020,[1] alleging violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*., and the Arkansas Minimum Wage Act (AMWA), Ark. Code Ann. § 11–4–201 *et seq*. Named Plaintiffs, each individually and on behalf of all other similarly situated, sought damages, including back wages and other damages available under the FLSA and AMWA, on the basis that they were employees misclassified as independent contractors allegedly resulting in unpaid minimum wages and overtime. *See* ECF No. 5, ¶¶ 1–2. Additionally, Named Plaintiffs individually asserted claims of retaliation. *See id.* at ¶¶ 4, 72, 86–89.

On March 15, 2021, Plaintiffs filed their Motion for Conditional Certification, For Disclosure of Contact Information and To Send Notices (Motion for Conditional Certification), *see* ECF Nos. 21–22, which Defendants opposed, *see* ECF Nos. 26–27. On May 11, 2021, the Court conditionally certified a collective of: "All Arkansas-based courier who worked for Stetson Courier, Inc., and John Stetson and made deliveries within this state at any time since 25 February 2017," and approved the distribution of notice to collective class members by mail and email. *See* ECF No. 31; *see also* ECF No. 33 (clarifying Order). After the close of the opt-in period (and after a few withdrawals of Consents, *see* ECF Nos. 54–55), 37 plaintiffs opted into the collective action class. *See* ECF No. 60, ¶ 2.[2]

On June 13, 2022, Defendants filed their Motion for Summary Judgment, *see* ECF Nos. 57–59, 62, and their Motion for Decertification of Collective (Motion to Decertify), *see* ECF

---

[1] Plaintiffs filed the operative Second Amended and Substituted Complaint—Collective Action on April 15, 2020. *See* ECF No. 5.

[2] A few more opt-in Plaintiffs would withdraw prior to trial.

Nos. 60–61. Defendants requested that the Court decertify the collective because Plaintiffs' misclassification claims would invariably require reliance on individualized inquiries into the discrete facts of the circumstances of each Plaintiff's work, which would result in individualized assessments of the relevant evidence predominating over the representative evidence of the collective. *See* ECF No. 62, p. 11–23. To support the Motion to Decertify, Defendants incorporated the deposition transcripts of ten Plaintiffs to demonstrate the individualized inquiries necessary to determine the proper classification of Plaintiffs. *See* ECF No. 60, ¶ 6 (incorporating exhibits attached to Defendants' Motion for Summary Judgment); *see also* ECF No. 57, 6; ECF No. 62. On October 24, 2022, the Court denied Defendants' Motion for Summary Judgment and Motion to Decertify. *See* ECF No. 76.

On November 4, 2022, Defendants filed their Motion for Findings of Fact and Conclusions of Law, or, In the Alternative, Motion for Clarification (Motion for Clarification), requesting that the Court identify the factual and legal bases on which it found representative evidence the Court was going to allow at trial or, in the alternative, to permit counsel for Defendants to examine all 40 plaintiffs at the bench trial. *See* ECF Nos. 82–83. The Court denied Defendants' Motion for Clarification at the hearing to address trial architecture and witnesses and allotted each side ten hours for proof and argument at trial. *See* ECF Nos. 92–93.

The bench trial commenced on December 12, 2022, prior to which Defendants renewed their Motion to Decertify for the reasons previously set forth in ECF No. 60–61. *See* ECF No. 107. At the close of Plaintiffs' case in chief, Defendants again moved for *inter alia* decertification on the bases set forth in ECF No. 60–61. During Defendants' case in chief, Plaintiffs Demetria Fails, Cheyanne Chambers, Jeremiah Stephens, and Ricky Coleman failed to

present for examination at trial.[3] After the bench trial, Defendants again moved to *inter alia* decertify the collective on the same bases as set forth in ECF No. 60–61.[4] Following trial, the Court issued its Order, (i) decertifying the *Holmes* collective and dismissing all opt-in Plaintiffs without prejudice; (ii) dismissing Michael Hames, Jr.;[5] and (iii) ruling in favor of Plaintiffs Holmes, Alexander, Norris, Garner, Michael E. Hames, and James Kenley[6] on their individual claims under the FLSA and AMWA that Stetson Courier, Inc. and John Stetson was their employer; and (iv) ruling in favor of Plaintiffs Holmes, Alexander, Norris, and Garner on their retaliation claim against Stetson Courier, Inc. and John Stetson. *See* ECF No. 116. The Court ordered the parties to submit post-trial briefing on damages. *See id.*

On January 27, 2023, Plaintiffs filed their Brief on Damages,[7] claiming entitlement to a total of $543,696.30, *see* ECF No. 132, including $68,195.98 in minimum wage damages, *see id.* at p. 4–15, $8,655.68 overtime pay damages, *see id.* at 15–19, and $466,844.64 in retaliation

---

[3] Prior to trail, the Parties jointly agreed to an exhibit list, which included these four individuals. *See* ECF No. 111.

[4] Defendants also moved for a mistrial for the failure of Plaintiffs Fails, Chambers, Stephens, and Coleman to appear at trial, *see e.g. Mickles, et al v. Country Club Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018) (finding that opt-in plaintiffs are party plaintiffs once a consent to join FLSA collective action is filed with the court), which was denied by the Court. ECF No. 116.

[5] Plaintiff Michael Hames, Jr., a party to the *Hames* lawsuit (which was consolidated with the *Holmes* lawsuit for trial), was also on the joint witness list and failed to appear for trial. *See* ECF No. 111. The Court dismissed Mr. Michael Hames Jr.'s claims against Defendants without prejudice. *See* ECF No. 116.

[6] Plaintiffs Michael E. Hames and James Kenley were parties to the *Hames* lawsuit, which was consolidated with the *Holmes* lawsuit for trial. *See* ECF No. 76, p. 5.

[7] All damages briefing concerned damages for the *Holmes* and *Hames* Plaintiffs.

damages, *see id.* at p. 19–25.[8] On February 24, 2023, Defendants filed their Damages Brief, arguing that Plaintiffs' estimate of wage damages were unrealistic, based on vague accounts, lacked any meaningful detail or explanation of the numbers used, and conflicted with record evidence and Plaintiffs' own testimony. *See* ECF No. 133. For the reasons explained in Defendants' Damages Brief, Defendants contended that Plaintiffs' damages calculations failed to meet even the relaxed burden of producing evidence of the amount and extent of their wage damages by a matter of just and reasonable inference, *see also Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946), as that burden has been interpreted and explained by the Eighth Circuit, *see Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059–60 (8th Cir. 2014). *See* ECF No. 133. Accordingly, Defendants estimated that Plaintiffs were entitled to a total of $0 in damages due to Plaintiffs' evidentiary failures and deficiencies. *See id.* at p. 75. Defendants also estimated that Plaintiffs Norris, Alexander, Gardner, and Holmes were entitled to a total of $12,779.26 in retaliation damages. *See id.* at p. 75–76.[9]

On September 29, 2023, the Court issued its Memorandum Opinion and Order, awarding damages as follows:

- Minimum Wage and Overtime Damages:

    o Patrick Norris: $6,277.80;

    o Tina Alexander: $4, 836.45;

    o Melissa Garner: $5,185.70;

    o Roy Holmes: $15,062.33;

---

[8] This includes Plaintiffs' claim that they were entitled to liquidated damages on their retaliation claims. *See* ECF No. 132, p. 24–25.

[9] Specifically, Defendants estimated that Mr. Norris should be awarded $7,572.86, Ms. Alexander should be awarded $4,586.40, Ms. Gardner should be awarded $620.00, and Ms. Holmes should be awarded $0. *See* ECF No. 133, p. 75.

- o  James Kenley: $1,354.93; and

- o  Michael E. Hames: $36.49.[10]

- Retaliation Damages:

  - o  Patrick Norris: $15,027.60;

  - o  Tina Alexander: $6,782.40;

  - o  Melissa Gardner: $1,590.40; and

  - o  Roy Holmes: $4,550.40.

*See* ECF No. 137. The Court's Judgment was issued contemporaneous with the Memorandum Opinion and Order. *See* ECF No. 138; *see also Hames, et al. v. Stetson Courier, Inc. and John Stetson*, No. 3:21-cv-218-DPM (E.D. Ark.) (*Hames*), ECF No. 34.[11] The total Judgment issued by the Court was $59,313.08, *see* ECF No. 138, and, when combined with the $1,391.42 judgment issued with regard to the *Hames* Plaintiffs, *see Hames*, ECF No. 34, totaled $60,704.50—approximately eleven percent of Plaintiffs' estimation of damages.

## III.    LEGAL STANDARDS

Under the FLSA, district courts "shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Vines v. Welspun Pipes Inc.*, 9 F.4th 849, 855 (8th Cir. 2021) (quoting 29 U.S.C. § 216(b)). Likewise, the AMWA provides that an employer shall be liable for "[c]osts and such reasonable attorney's fees as may be allowed by the court." Ark. Code Ann. § 11-4-218. To calculate reasonable attorneys' fees, federal courts begin by employing the lodestar method, which multiplies the number of hours worked by the prevailing

---

[10] James Kenley and Michael E. Hames were *Hames* Plaintiffs but are included because the damages briefing did not distinguish between *Holmes* and *Hames* Plaintiffs.

[11] An identical Memorandum Opinion and Order was issues in the *Hames* case. *See Hames*, ECF No. 33.

hourly rate. *Id.* (quoting *Childress v. Fox Assocs., LLC*, 932 F.3d 1165, 1172 (8th Cir. 2019)). "The court 'may rely on reconstructed time entries to calculate the hours worked if those entries satisfactorily document the time,' but it 'should exclude hours that were not reasonably expended from its calculations.'" *Id.* (quoting *Childress*, 932 F.3 at 1172) (cleaned up in *Vines*). "Then, it 'may reduce [the lodestar] if a plaintiff does not obtain all the relief . . . sought.'" *Id.* (quoting *Childress*, 932 F.3d at 1172). "When reducing the lodestar, '[t]he district court also may consider other factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–18 [5th Cir. 1974)],'" *id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983)) (alterations in original), which include: (1) the time and labored required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the resulted obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases, *see Ga. Hwy. Express, Inc.*, 488 F.3d at 717–18.

## IV.    ARGUMENT

In support of their Motion, Plaintiffs have submitted counsel's full billing history, affidavits, and conducted a self-audit to remove any hours that are excessive, redundant, or otherwise unnecessary. *See* ECF No. 142, p. 7. However, further reductions are necessary to avoid the payment of excessive hours billed at rates that are above the local market in accordance with the FLSA's statutory intent and the case law interpreting a "reasonable" fee for similar lawsuits.

**A.** **CALCULATION OF THE LODESTAR REQUIRES REDUCTION OF THE FEES REQUESTED BY SLF.**

The first step for calculating a reasonable attorneys' fee is by employing the lodestar, which requires the Court to multiply the number of hours reasonably expended on the case by the prevailing hourly rate. *Vines* 9 F.4th at 855. For the reasons set forth below, both the number of hours expended and the hourly rate requested by SLF are inflated and require significant reductions.

**1.** **THE HOURS EXPENDED BY SLF ARE NOT REASONABLE AND SHOULD BE REDUCED.**

After a self-conducted "billing audit," SLF alleges that it worked 838.9 hours on this case yet only claims 641.6, resulting in alleged discount of $36,690.00. *See* ECF No. 142, p. 7–8; *see also* ECF No. 141–1. While, at first glance, a $36,000 discount appears exceedingly altruistic, none of the excluded billing entries were provided.[12] Rather than give into the psychological urge to begin the analysis presupposing SLF has already excluded 197.3 hours legitimately worked in furtherance of litigation, evidence of which was not provided, Defendants contend that the proper starting point for consideration of SLF's fee request is for the 641.6 hours it *claimed*.[13] *See Smiley v. Little Rock Donuts, LLC*, 4:20-CV-00102-JM, 2021 WL 4302219, at *3 (E.D. Ark. Sept. 21, 2021) ("Although SLF attempted to self-audit there are still issues that the Court will address."); *Skender v. Eden Isle Corp.*, No. 4:20-cv-00054-BRW, 2021 WL 2964991, at *5 (E.D. Ark. July 14, 2021) ("After conducting a self-audit, SLF seeks reimbursement for 116.1 hours of

---

[12] Marking up a good or service and putting it on sale is a pricing strategy that misleadingly conveys to the consumer that s/he is receiving a discount. Neither Defendants nor the Court know the legitimacy of the "excluded" billing entries. Are those entries for the performance of work done in furtherance of the litigation or work that would have excluded anyway, such as administrative work, duplicative billing, or micromanaging?

[13] If SLF believed that the billing entries excluded for legitimate work done in furtherance of this litigation, it is unclear why those billing entries were not included.

work. Although SLF removed some of the unnecessary oversight-billing, there is still plenty being claimed.")

Of the 641.6 hours claimed by SLF, there are still significant "issues" that should be addressed. *See Smiley*, 2021 WL 4302219, at *3. There are **458** billing entries for "Client Communications," where the description is listed as: "PRIVILEGED INFORMATION." *See* ECF No. 141–1. As this Court has recognized in deducting billing entries with redacted narratives, "there is no way for the Court to determine whether the [redacted] communications advanced the litigation. Furthermore, the Court doubts that the entries reveal privileged information." *Smiley*, 2021 WL 4302219, at *3 (deducting $1,370 for "client communications" with no description). The 458 billing entries obscured by "PRIVILEGED INFORMATION" are insufficient to show that the time was spent in advancement of the litigation and must be deducted. *See id.*; *see also Skender*, 2021 WL 2964991, at *6 (". . . there are over sixty entries where the description of the work performed is entirely redacted. Typically it involves 'client communication.' However, I have no idea whether the communication was reasonable or necessary to advance the case. Since some were removed and others were not, I can only presume that some were unreasonable. Additionally, surely not every contact with the client involved a privileged communication."); ECF No, 141–1.

Similarly, Mr. Qualls made 29 billings entries with the narrative: "Preparation for Trial." *See* ECF No. 141–1, p. 17–19. Notably, in other entries in the "Trial Prep" category, there is a specific description of the preparation performed. *See id.* at 15–19. Further, Mr. Qualls frequently logged multiple identical "Preparation for Trial" entries on the same day. *See id.* Accordingly, these 29 billing entries should likewise be excluded as vague. SLF also claims three billing entries for Mr. Qualls for "Preparation for Hearing" and two entries labeled as

"Preparation for Court." *See* ECF No. 141–1, p. 18–19. Like his "Preparation for Trial" billing entries, these entries are also vague and should be excluded.

"Staff" work is covered by overhead and should not be shifted to Defendants. *See Smiley*, 2021 WL 4302219, at *3 (citing *Shrader v. OMC Aluminum Boat Gp., Inc.*, 128 F.3d 1218, 1222 (8th Cir. 1997) ("Secretarial services were excluded from the award as well.")). Similarly, courts have frequently admonished and deducted hours for excessive intrafirm communications. *See Skender*, 2021 WL 2964991, at *5 (collecting cases). The following entries are "administrative" work that are clearly unnecessary intraoffice staff communications that dd not advance the litigation and, as such, should be deducted from Plaintiffs' fee request:

- Blake Hoyt:

    1) 2/13/2020: "Telephone Conference(s) with Staff re Client arrival and location for meeting."

    2) 2/21/2020: "Telephone Conference(s) with Staff re comms w/ Client and scheduling meeting."

    3) 2/24/2020: "Conference with Staff re comms w/ Pl and meeting"

    4) 2/25/2020: "Conference with Staff re meeting Cls and reserving conf room"

    5) 3/2/2020: "Receive, read and prepare response to email(s) from Staff re comms w/ Opt in-Jackson, rep K, and updated master list"

    6) 3/6/2020: "Receive, read and prepare response to email(s) from Staff re meeting with client and delivery of records"

    7) 3/17/2020: "Receive, read and prepare response to email(s) from Staff re comms with Client and case status"

8)   3/19/2020: "Receive, read and prepare response to email(s) from Staff re comms with Client and case status"

9)   3/20/2020: "Receive, read and prepare response to email(s) from Staff re service"

10)   3/24/2020: "Receive, read and prepare response to email(s) from Staff re comms with Pl-Holmes and delivery of records"

11)   3/30/2020: "Conference with Staff re TLO search to obtain individual DEF's service info"

12)   4/1/2020: Telephone Conference(s) with Staff re meeting w/ Client and delivery of docs"

13)   4/1/2020: "Conference with Staff re Client meeting and copies of records"

14)   9/15/2020: "Receive, read and prepare response to email(s) from Staff re sent docs, comms w/ Pls and time for review and esign"

15)   9/15/2020: "Compose electronic communication to Staff w/ docs for distribution for review and esign and r contact info"

16)   9/17/2020: "Receive, read and prepare response to email(s) from Staff re comms 2/ Pls and status of dec review and signing"

17)   9/21/2020: "Compose electronic communication to Staff re revised decs and sending to Pls for signature"

18)   2/2/2021: "Conference with Paralegal and Staff re rescheduled depos and calendaring"

19)   2/10/2021: "Conference with Staff and Paralegal re depo cancellation and rescheduling"

11

- Josh Sanford:

  1) 5/20/2021: "Telephone Conference(s) with Staff: class notice project"

- Colby Qualls:

  1) 1/31/2022: "Conference with Staff via email re good faith letter"

  2) 8/4/2022: "Conference with staff re damages calculations for opt-ins"

  3) 11/17/2022: "Conference with Staff re damages calculation"

  4) 11/18/2022: "Conference with Staff via damages calculations and case strategy"

  5) 11/21/2022: "Conference with Staff re damages calculations"

  6) 11/21/2022: "Conference with Staff re damages calculation and case strategy"[14]

  7) 11/23/2022: "Conference with Staff re damages calculations"

  8) 11/23/2022: "Conference with Staff via telephone re damages calculations"[15]

ECF No. 141 – 1, p. 1, 3–5, 7, 9, 13, 16. Similarly, Mr. Hoyt and Mr. Qualls had **83** communications or conferences with "Paralegals." To the extent *all* these entries of "conferences" with paralegals are not excluded completely as administrative work, they should be significantly reduced as excessive:[16]

- Blake Hoyt:

---

[14] This entry and the previous entry occurred on the same day and are clearly duplicative.

[15] Again, this entry and the previous entry occurred on the same and are clearly duplicative.

[16] *See Skender*, 2021 WL 2964991, at *5 (collecting cases).

1)    4/1/2020: "Receive, read and prepare response to email(s) from Paralegal re comms w. Cl and re termination"

2)    4/3/2020: "Receive, read and prepare response to email(s) from Paralegal re comms w/ attorney for former Def and case status"

3)    8/20/2020: "Receive, read and prepare response to email(s) from Paralegal re comms w/ Pl-Norris, case status and next steps"

4)    8/28/2020: "Telephone Conference(s) with Paralegal re comms w/ Pl-Norris and case status"

5)    9/4/2020: "Receive, read and prepare response to email(s) from Paralegal re comms w/ Pl-Norris, case status, MCA and decs"

6)    9/9/2020: "Receive, read and prepare response to email(s) from Paralegal re edits to IDs and service to OC"

7)    9/21/2020: "Receive, read and prepare response to email(s) from OC and Paralegal re Defs' Initial Disclosures"

8)    11/16/2020: "Conference with Paralegal re comms w/ Pl-Holmes, case status, update and next steps – email"

9)    1/11/2021: "Conference with Paralegal re deadlines, draft Rogs and RFPs, case facts, strat and next steps"

10)   1/12/2021: "Conference with Paralegal re edits to Rogs/RFPs and service to OC – email"

11)   1/14/2021: "Conference with Paralegal re comms w/ Pls, depo scheduling and comms w. OC"

12) 1/20/2020: "Receive, read and prepare response to email(s) from OC and Paralegal re depo scheduling and NODs"

13) 1/20/2021: "Conference with Paralegal re depo scheduling, comms w/ Pls and scheduling depo prep"[17]

14) 1/25/2021: "Conference with Paralegal re comms w/ Pls, depo scheduling, prep scheduling and format"

15) 1/28/2021: "Conference with Paralegal re deadlines, draft answers to Rogs/RFPs, edits, depos and next steps"

16) 1/29/2021: "Conference with Paralegal re extension, comms w/ Clients re rescheduling depos and next steps"

17) 2/1/2021: "Conference with Paralegal re comms w/ Pls, depo scheduling and prep, deadlines and comms w/ OC"

18) 2/8/2021: "Conference with Paralegal re edits to objections, comms w/ Cls and next steps"

19) 2/8/2021: "Conference with Paralegal re comms w/ Pl-Alexander re disco responses and re depo prep"

20) 2/9/2021: "Conference with Paralegal re draft disco responses, documents, comms w/ Pls, service and next steps"

21) 2/10/2021: "Conference with Paralegal re comms w/ Pl-Norris, receipt of docs, depo prep, docs for production and next steps"

22) 2/10/2021: "Conference with Paralegal re docs from Pls, disco responses, doc production, strategy and next steps"

---

[17] This entry and the previous entry occurred on the same and are clearly duplicative.

23) 2/10/2021: "Conference with Paralegal re comms w/ Pls, disco reqs and rescheduling depos"

24) 2/11/2021: "Conference with Paralegal re edits to disco responses, docs for production and extension"

25) 2/11/2021: "Conference with Paralegal re edits to disco responses, docs for production and extension"[18]

26) 2/22/2021: "Conference with Paralegal re edits to disco responses and docs for production"

27) 2/23/2021: "Receive, read and prepare response to email(s) from OC and Paralegal re rescheduling depos and available dates"

28) 2/23/2021: "Conference with Paralegal re edits to disco responses, docs for production, service to OC, strategy and next steps"

29) 2/24/2021: "Conference with Paralegal and SG re edits to disco responses, additional Rogs, deadlines, comms w/ Pls, doc production, strategy and next steps"

30) 2/24/2021: "Conference with Paralegal re issues w/ accessing responses to discovery and resending"

31) 2/24/2021: "Conference with Paralegal re additional edits to discovery responses, comms w/ Pls, case facts, depo prep, strategy and next steps"

- Colby Qualls:

1) 4/22/2021: "Conference with Paralegal via telephone re damages"

2) 5/12/2021: "Conference with Paralegal"[19]

---

[18] This entry occurred on the same day as the prior entry and has an identical description of work.

3)    5/19/2021: "Conference with Paralegal and SR re notice dissemination and client communication"

4)    5/20/2021: "Conference with JS and Paralegal via e-mail"

5)    5/20/2021: "Conference with Paralegal via telephone"

6)    5/20/2021: "Conference with JS and Paralegal via email re notice form and processes"

7)    5/27/2021: "Conference with Paralegal via telephone re damages"

8)    6/22/2021: "Conference with Paralegal"

9)    6/24/2021: "Conference with Paralegal"

10)    11/2/2021: "Conference with Paralegal re opt-in (Jackson) and potential retaliation"

11)    12/13/2021: "Conference with Paralegal via electronic communication re potential retaliation claim"

12)    1/13/20 "Conference with Paralegal re client update (Gardner)

13)    2/21/2022: "Conference with Paralegal via email re client (Fellows) question"

14)    3/7/2022: "Conference with Paralegal via email re supplemental documents"

15)    3/14/2022: "Conference with Paralegal via email re discovery requests propounded by Defendants"

16)    3/21/2022: "Conference with Paralegal via email re deposition scheduling"

---

[19] This entry does not even attempt the usual vague description of the nature of the "conference."

17)   3/24/2022: "Conference with Paralegal via telephone re deposition scheduling"

18)   3/25/2022: "Conference with Paralegal via electronic communication re supplemental document production"

19)   3/28/2022: "Conference with Paralegal re deposition and scheduling"

20)   4/4/2022: "Conference with Paralegal via electronic communication re deposition scheduling"

21)   4/4/2022: "Conference with Paralegal via email re deposition notice for Chambers"

22)   4/6/2022: "Conference with Paralegal re supplemental disclosures"

23)   4/10/2022: "Conference with Paralegal via email re Jackson's discovery responses"

24)   4/10/2022: "Conference with Paralegal via email re Fellows' discovery responses"

25)   4/11/2022: "Conference with Paralegal via email re Stephens discovery responses"

26)   4/11/2022: "Conference with Paralegal via email re document production for Jackson"

27)   4/11/2022: "Conference with Paralegal via email re Fellows document production"

28)   4/12/2022: "Conference with Paralegal re McDonald document production"

29)  4/12/2022: "Conference with Paralegal via email re McDonald document production"[20]

30)  4/13/2022: "Conference with Paralegal re deposition scheduling"

31)  4/14/2022: "Conference with Paralegal via electronic communication re opt-in contact information"

32)  4/18/2022: "Conference with Paralegal and LE via email re document production for deposition"

33)  4/20/2022: "Conference with Paralegal via email re Fails document production"

34)  5/2/2022: "Conference with Paralegal via email re disengagement letters of Melton and English"

35)  5/24/2022: "Conference with Paralegal via email re discovery responses"

36)  6/27/2022: "Conference with Paralegal via email re receiving client signature on declaration"

37)  7/18/2022: "Conference with Paralegal via electronic communication re scheduling client call"

38)  8/23/2022: "Conference with Paralegal via email re documents received from People Trust"

39)  10/13/2022: "Conference with Paralegal via email re damages calculations for opt-ins"

40)  10/13/2022: "Conference with Paralegal via electronic communication re withdrawals of consents and disengagements"

---

[20] This entry is also clearly duplicative of the prior entry.

41)   10/18/2022: "Conference with Paralegal via email re disengagement letters"

42)   11/2/2022: "Conference with Paralegal via electronic communication re discovery tax-return forms"

43)   11/3/2022: "Conference with Paralegal re scheduling depositions"

44)   11/3/2022: "Conference with Paralegal re Joint Motion for Pretrial Conference"

45)   11/11/2022: "Conference with Paralegal via email re document production"

46)   11/15/2022: "Conference with Paralegal re document production"

47)   12/1/2022: "Conference with Paralegal via electronic communication re client status update and trial prep"

48)   12/2/2022: "Conference with Paralegal via email re trial prep and client status update"

49)   12/5/2022: "Conference with Paralegals re pretrial planning and case strategy"

50)   12/7/2022: "Conference with Paralegal via email re compiling Exhibits for trial"

51)   12/7/2022: "Conference with Paralegals re Exhibit preparation"

52)   12/15/2022: "Conference with Paralegal via email re client status update email"

*Id.* at p. 1–5, 7–17, 19.   While Defendants appreciate SLF's willingness to use Paralegals to perform substantive legal work at a lower rate, any benefit is lost when an attorney (billing at attorney rates) has an unnecessary "conference" after every task performed by the Paralegal.

Likewise, unnecessary and excessive oversight-billing should not be claimed. *See Skender*, 2021 WL 2964991, at *5. While SLF can engage in a "collaborative approach" involving constant oversight by a senior lawyer, it cannot expect (nor should it ask) Defendants to pay for the practice, since it adds unnecessary hours to the bill. *See id.* Therefore, the following entries should be deducted as unnecessary oversight for which no "fee-paying client would compensate SLF":

- Blake Hoyt:

    1) 2/21/2020: "Conference with JS re comms w/ Clients and next steps"

    2) 3/17/2020: "Receive, read and prepare response to email(s) from AS[21] and JS re comms w/ Def and amended complaint"

    3) 3/19/2020: "Conference with JS re draft FAC"

    4) 4/2/2020: "Compose electronic communication to JS and JW w/ SAC and MFL for review and edits"

    5) 5/27/2020: "Receive, read and prepare response to email(s) from OC and JS re extension for Answer and representation"

    6) 6/4/2020: "Conference with JS re case status, MCA, strategy, and next steps"

    7) 9/9/2020: "Conference with JS re Initial Disclosures and MCA"

---

[21] It is unclear who "AS" is. Anna Sanford Stiritz is an attorney at the firm, although she did not bill on this particular matter. *See* ECF No. 141–1.

- Colby Qualls:

  1) 4/19/2021: "Conference with JS re RIS 216 edits"

  2) 5/20/2021: "Conference with JS and Paralegal via e-mail"[22]

  3) 5/20/2021: "Conference with JS and Paralegal via email re notice form and processes"

  4) 3/16/2022: "Conference with JS via email re potential discovery issues"

  5) 11/29/2022: "Conference with JS via email re trial strategy"

  6) 12/5/2022: "Conference with JS via email re case strategy"

  7) 12/7/2022: "Conference with JS re trial prep"

  8) 12/13/2022: "Conference with JS via telephone re trial strategy"

ECF No. 141–1, p. 1–2, 6–7, 9, 13, 16–17, 19.

After excluding the billing entries that represent unreasonable time expended in this matter, as set forth above, Defendants calculate that $ 25,158.10 should be deducted from Plaintiffs' request for fees.

The extent of work claimed by SLF is replete with billing entries Courts have excluded. Yet, Plaintiffs' Motion, without any hesitancy, requests that the cost of this work be shifted to Defendants. While Defendants endeavored to perform line-by-line examination of the multitude of billing entries in the two-week response time, there are undoubtedly invalid entries that Defendants missed. *See Smith v. Om Purshantam, LLC*, No. 4:18-cv-00797-KGB, 2021 WL 1230468, at *4 (E.D. Ark. Mar. 31, 2021). Accordingly, Defendants contend that additional reductions are necessary for the extent of work to be "reasonable."

---

[22] This entry should also be deducted because it is vague.

### 2.   THE HOURLY RATE CLAIMED BY SLF IS NOT REASONABLE AND MUST BE REDUCED.

SLF requests various hourly rates in this case, ranging from $383 to $75:

- Josh Sanford: $383;

- Courtney Harness: $300;

- Vanessa Kinney: $300;

- Patrick Wilson: $300;

- Rebecca Matlock: $250;

- Daniel Ford: $200;

- Blake Hoyt: $175;

- Laura Edmonson: $150;

- Colby Qualls: $150;

- Paralegal: $100; and

- Law Clerk: $75.

*See* ECF No. 142, p. 13–14. According to SLF, the "hourly rates charged by SLF are reasonable and below the national average for complex litigation." *See id.* at 14. However, the Eighth Circuit has held that "[a] reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001); *see also Burton v. Nilkanth Pizza, Inc.*, 20 F.4th 428, 432 (8th Cir. 2021) ("The district court properly applied its familiarity with the local bar to calculate reasonable rates."); *Banks v. Slay*, 875 F.3d 876, 882–83 (8th Cir. 2017) (no abuse of discretion for reducing hourly rate based on a market survey of hourly rate for lawyers in the greater St. Louis area). "FLSA litigation is not so nuanced that a national rate would be justified," *Vines v. Welspun Pipes, Inc.*, No. 4:18-

CV-00509-BRWS, 2021 WL 11583464, at *5 (E.D. Ark. Sept. 8, 2021) (Slip Copy), and "[j]udges in the Eastern and Western Districts of Arkansas routinely reject as unreasonable hourly rates of $300+ for Mr. Sanford and $200+ for more junior attorneys," *Mitchell v. Brown's Moving & Storage, Inc.*, No. 4:19-CV-783-LPR, 2023 WL 2715027, at *3 (E.D. Ark. Mar. 29, 2023) (Slip Copy) (citing *Ewing v. Pizza Czar, Inc.*, No. 3:19-CV-00232-LPR, 2022 WL 614932, at *6 (E.D. Ark. Mar. 2, 2022) (lowing the rates for Mr. Sanford to $250; for Ms. Kinney and Mr. Rauls to $175; and for Mr. Brown to $125); *Bonds v. Langston*, No. 3:18-CV-00189, 2021 WL 4130508, at *3 n. 26 (E.D. Ark. Sept 9, 2021) (Slip Copy) (collecting cases)).

Substantive litigation in this matter spanned from February 2020, *see* ECF No. 1, to February 2023, when the damages briefs were submitted, ECF No. 132. Mr. Sanford's request for an hourly rate of $383 is staggering. *See* ECF No. 142, p. 13–14. Notably, in this matter, Mr. Sanford billed at the same $383 hourly rate in 2020, 2021, and 2022. *See* ECF No. 141–1. However, Mr. Sanford was contemporaneously seeking a much lower rate in other FLSA cases. *See e.g. Burton*, 20 F.4th at 432 (SLF sought rates of $275 per hour for the managing partner); *Bonds*, 2021 WL 4130508, at *3 (SLF requested $345 per hour for Josh Sanford); *Vines*, 2021 WL 11583464, at *2 (SLF sought $325 per hour for Josh Sanford). In a footnote, Plaintiffs cite to this Court's decision in *Estes v. Buell*, *see* ECF No. 142, p. 16 n.11, in which the Court found that an hourly rate of $325.00 for Mr. Sanford was reasonable. *See Estes v. Buell*, No. 4:18-CV-0026-KGB, 2020 WL 13783678, at *2 (E.D. Ark. May 25, 2020). However, in *Estes*, the Court specifically noted that the reasonableness of the fees was not contested. *See id*.

The billing spreadsheet indicates that Blake Hoyt, Colby Qualls, and Vanessa Kinney are the attorneys with the overwhelming majority of billing entries. In 2021, this Court reduced Ms. Kinney's fee from $250 to $175 and Mr. Hoyt's fee from $175 to $150. *See Vines*, 2021 WL

11583464, at *5. In 2023, this Court rejected SLF's request for a $300 hourly fee for Ms. Kinney—the same fee SLF presently seeks—and found her reasonable rate to be $175 per hour. *See Clark v. Pollo, LLC*, No. 4:20-CV-01100-LPR, 2023 WL 26922425, at *2–3 (E.D. Ark. Mar. 29, 2023) (Slip Copy); *see also Brown's Moving & Storage*, 2023 WL 2715027, at *2–3 (reducing Ms. Kinney's fee from $300 to $175 per hour). Likewise, this Court rejected SLF's request for a $150 hourly fee for Mr. Qualls and Mr. Hoyt in 2023—the hourly fee SLF seeks in this case—and found $125 per hour to be Mr. Qualls's and Mr. Hoyt's reasonable rates. *See Clark*, 2023 WL 26922425, at *3; *Brown's Moving & Storage*, 2023 WL 2715027, at * 2–3.[23] Further, this Court has recently reduced Ms. Harness's hourly fee from $300 to $175, *Brown's Moving & Storage*, 2023 WL 2715027, at * 2–3, and Ms. Matlock's hourly fee from $250 to $150, *Clark*, 2023 WL 26922425, at * 2–3.

In support of Mr. Qualls's rate of $150 per hour, SLF relies on *Intres v. Neumeier Enter., Inc.*, No. 2:22-cv-02067-PKH-MEF, 2023 WL 4571277, (W.D. Ark. June 29, 2023) (Slip Copy). *See* ECF No. 142, p. 14–15. In *Intres*, the Magistrate exercised its "independent obligation to ensure that [SLF's] rates [were] reasonable in the current market area," but the defendant "stated no objection to the hourly rates requested by [SLF]." *Id.* at 4. Moreover, while the Magistrate's Report and Recommendation was adopted by the Court, the defendant did not object to any part of the Magistrate's findings or recommendations, including the reasonableness of the rates. *See Id.,* 2023 WL 4566060 (Order adopting findings and recommendations). Similarly, Mr. Sanford represents that, "[i]n *Rodriguez v. Superior Real Estate Sols.*, the plaintiff requested total fees of $14,833.81, which included requested hourly rates of $383.00 for attorney Josh Sanford and

---

[23] In September 2021, this Court found that an hourly fee of $150 for Mr. Hoyt was reasonable. *See Beasley v. Maculis Tire and Service Ctr., LLC*, No. 4:19-CV-00471-JM, 2021 WL 11962570, at *3 (E.D. Ark. Sept. 17, 2023).

$300.00 for attorney Venessa Kinney. No. 4:19-cv-405-DPM, 2021 U.S. Dist. LEXIS 81981, at *1 (E.D. Ark. 29 Apr. 2021)." ECF No. 142, p. 15. "However, what SLF fails to mention is that the defendant did not object to the hourly rates. . . . Also noticeably absent from the motion is any reference to all the other cases where his $300+ hourly rate was rejected and reduced." *Skender v. Eden Isle Corp.*, 4:20-cv-00054-BRW, 2021 WL 2964991, at *3 (E.D. Ark. July 14, 2021) (collecting cases in which Mr. Sanford's fee was reduced).

The sole, passing acknowledgement that SLF's "rates requested [in Plaintiffs' Motion] are not as low as those awarded in some other cases," totals four lines and a single citation. *See* ECF No. 142, p. 17.[24] In its defense, SLF observes that "the rates requested by SLF reflect the *geographic area in which SLF practices*, the type of law practiced by SLF, the qualifications and experience of SLF's attorneys who worked on this case, and the resulting market value of those factors." *Id.* (emphasis added). However, as SLF is acutely aware, "the geographic area" in which it practices extends outside of the "local bar," which is the geographic area relevant to

---

[24] In a footnote, SLF asserts that its "continued requests for higher hourly rates than the rates previously awarded by courts in this district is not out of disrespect for judicial decisions but is an effort to maintain consistency while pursuing the Firm's interests." ECF No. 142, p. 17 n.13. It is axiomatic that higher fee rates result in higher total fees petitioned for (and ideally collected) by SLF and that collecting more money is a better business proposition than collecting less money. Thus, it is perfectly clear that high rates are in "the Firm's interest." However, this logic misses the point. SLF understands that it is entitled to only what is a reasonable fee in this local market. As set forth in this Response, the reasonableness of an attorney's fee, particularly the fees of SLF, have been thoroughly considered and adjudged by U.S. District Courts for the Eastern and Western Districts of Arkansas. Yet, SLF continues to assert entitlement to hourly rates that far exceed those that this Court has stated are reasonable and signals to this Court that it has no intention of ceasing this practice. As this Court has observed, "[w]hen a party submits a fee petition, it is not the opening bid in the quest for an award." *Vines*, 2021 WL 11583464, at *12 (cleaned up) (citations omitted); *see also id.* at *2 (stating that, "[o]nce again, Mr. Sanford seeks $325 an hour, as if it is an opening bid in a negotiation," and collecting cases). But, this is exactly the rationale exhibited in Plaintiffs' Motion.

determining what constitutes a reasonable rate. *Burton*, 20 F.4th at 432[25] ("The district court properly applied its familiarity with the local bar to calculate reasonable rates."); *see also Emery*, 272 F.3d at 1042 ("[a] reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated.").

Lastly, SLF's rates of $100 for paralegals and $75 for law clerks have likewise been rejected by this Court. Indeed, in the same case SLF relies on to support an hourly rate of $150 for Mr. Qualls, the Court reduced paralegal rates to $75 per hour and law clerk rates to $25 per hour. *See Intres*, 2023 WL 4571277, at *4 (defendant did not object to rate, but the Magistrate recommended a fee reduction as part of its "independent obligation to ensure that the rates are reasonable in the current market area."); *Intres*, 2023 WL 4566060 (adopting and approving Magistrate's findings and recommendations without objection from the defendant). The U.S District Courts for the Eastern and Western Districts have routinely approved a $25 hourly rate for law clerks, *see Clark*, 2023 WL 26922425, at *3; *Brown's Moving & Storage*, 2023 WL 2715027, at *3; *Holcombe v. Midwest Outdoor Concepts, LLC*, No. 5:22-CV-51161, 2023 WL 3077856, at *2 (W.D. Ark. Apr. 23, 2023); *Carden v. Logan Centers, Inc.*, No. 3:19-cv-167-DPM, 2022 WL 4537871, at *1 (E.D. Ark. Sept. 28, 2022)*, and a $75 hourly rate for paralegals, *see Holcombe*, 2023 WL 3077856, at *2; *Carden*, 2022 WL 4537871, at *1; *but see Clark*, 2023 WL 26922425 (approving a $100 hourly rate for paralegals); *Brown's Moving & Storage*, 2023 WL 2715027, at *3 (same).

The hourly rates proposed by SLF exceed the *reasonable* rates approved by this Court on numerous occasions. Indeed, SLF acknowledges that its requested rates have been deemed

---

[25] SLF was plaintiffs' counsel in this case.

"unreasonable," yet it, without convincing explanation, seeks such rates anyway. *See* ECF No. 142, p. 17. Accordingly, Defendants request that the Court reduce the hourly rates as follows:

- Josh Sanford: $250;

- Courtney Harness: $175;

- Vanessa Kinney: $175;

- Patrick Wilson: $175;

- Rebecca Matlock: $150;

- Daniel Ford: $125;

- Blake Hoyt: $125;

- Laura Edmonson: $100;

- Colby Qualls: $125;

- Paralegal: $75; and

- Law Clerk: $25.

As explained above, SLF's requested fee should be reduced to reflect the rate that are "reasonable" in the "local market."

**B.  PLAINTIFFS' UNSUCCESSFUL CLAIMS WARRANT A REDUCTION OF FEES UNDER *CHILDRESS*.**

After the Court arrives at the "lodestar," "[t]hen, it 'may reduce [the lodestar] if a plaintiff does not obtain all the relief . . . sought.'" *Vines v. Welspun Pipes, Inc.*, 4 F.4th 849, 855 (8th Cir. 2021) (quoting *Childress v. Fox Assocs., LLC*, 932 F.3d 1165, 1172 (8th Cir. 2019)) (alteration in *Vines*). Here, Plaintiffs initiated this lawsuit as a collective action. *See* ECF Nos. 1, 5. At the commencement of trial, the collective included a total of **40 Plaintiffs**, including the Named Plaintiffs, the *Hames* Plaintiffs, and the opt-in Plaintiffs. Plaintiffs sought minimum

wage and overtime damages, as well as liquidated damages, for *all* 40 Plaintiffs. *See* ECF No. 5. Additionally, Plaintiffs Holmes, Alexander, Norris, and Garner sought damages for retaliation and liquidated damages. *See id.* Based on Plaintiffs' counsel's calculation of damages *after* trial, the pre-trial exposure to Defendants was in excess of $1,250,000.[26] As the Court is aware, Plaintiffs recovered a mere $ $60,704.50[27]—less than **5%** of the estimated pre-trial exposure.[28]

Additionally, when considering the "relief . . . sought," it is useful to view the issue in terms of the claims of the individual Plaintiffs. That is, counsel began trial seeking recovery of unpaid minimum wage and overtime for **40 individuals**. At the conclusion of the trial, counsel for Plaintiff was seeking recovery of unpaid minimum and overtime for **6 individuals**—a mere 15% of the number of Plaintiffs when the trial began. **Thirty-four claims** were fully dismissed by the Court. *See* ECF No. 116.

Given the significant differential between the relief sought by Plaintiffs at the beginning of this litigation and the relief obtained for Plaintiffs by SLF, *see Vines*, 4 F.4th at 855 (quoting *Childress,* 932 F.3d at 1172), Defendants request that the Court exercise its discretion to make a

---

[26] Plaintiffs claimed, in their Brief on Damages, that the retaliation damages for Plaintiffs Holmes, Alexander, Norris, and Garner, with liquidated, totaled $466,844.64. ECF No. 132, p. 19–25. Plaintiffs also claimed that in their post-trial Brief in Damages that, *without liquidated* (which the Court ruled out at trial), that six Plaintiffs were entitled to a total of $68,195.98. This represents an average of $11,366 per Plaintiff. Extrapolating this figure across the class, an award for all 40 Plaintiffs would have resulted in approximately $454,640, without liquidated, and $909,280, with liquidated. Thus, *prior to trial*, a reasonable estimation of Plaintiffs' desired recovery would be approximately $1,362,920.

[27] This includes $59,313.08 for the *Holmes* Plaintiffs and $1,391.42 for the *Hames* Plaintiffs.

[28] *See* Footnote 26.

significant reduction in the fees requested by Plaintiffs. Specifically, Defendants request that the Court impose a 50% reduction.[29]

## C.  THE *JOHNSON* FACTORS WARRANT FURTHER REDUCTION OF SLF'S FEES.

"When reducing the lodestar, '[t]he district court also may consider" the *Johnson* factors. *See Vines*, 4 F.4th at 855 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983)). Unsurprisingly, Plaintiffs conclude that the *Johnson* factors warrant an *upward* deviation in SLF's fees from the lodestar. First, citing an opinion from the Southern District of Ohio, *Autrey v. Food Concepts,* Plaintiffs state: "Specialization, such as in labor and employment law, can support a higher-than-average rate. Accordingly, this factor supports an upward deviation, if any." ECF No. 142, p. 18 (internal citation omitted). In *Autrey*, the Court (which is not within the "local bar" in *this* case, *see Burton v. Nilkanth Pizza, Inc.*, 20 F.4th 428, 432 (8th Cir. 2021) ("The district court properly applied its familiarity with the local bar to calculate reasonable rates."); *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001) ("[a] reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated.")), the Court averaged the rates for: (a) an attorney practicing in suburban Columbus, Ohio ($200); (b) an attorney with twenty-six to thirty-five years of practice ($225); (c) an attorney specializing in labor and employment law ($288); and (d) a partner in a small firm of two-to-seven attorneys ($225). *Autrey v. Food Concepts Int., LP*, No. 2:13-cv-00131, 2017 WL 1163845, at *5 (S.D. Ohio Mar. 29, 2017). Notably, in *Autrey*, the Court was asked and refused to award the attorney's requested fee of $325. *Id.* Rather, the Court assessed the local bar and awarded a "reasonable" fee based on its findings. *See id.* The takeaway from the *Autrey* opinion is not remotely related to the purpose for which Plaintiffs cite it. Indeed, the *Autrey* Court utilized the

---

[29] Given that percentage of the relief obtain compared with the relief sought (5%), Defendants believe that a 50% reduction is generous.

same approach as this Court—applying its familiarity with the local bar to calculate a reasonable fee. *See Burton*, 20 F.4th at 432. As Defendants have explained in detail, *see* Section III(A)(2), *supra*, $338 per hour is *not a reasonable fee* and *Autrey* only supports that conclusion.

Second, Plaintiffs argue that the "contingency nature of the fee" demands an upward deviation from the lodestar, which is "captured" in SLF's higher hourly rate. *See* ECF No. 142, p. 18–19. While Defendants have not been provided with a copy of any agreement between SLF and Plaintiffs regarding any fee arrangement, Plaintiffs assert that SLF "relies on the fee-shifting provisions of the FLSA to recover fees in this case." *Id.* at p. 18. However, it is and has been the practice of SLF to rely on the FLSA's fee-shifting provision to recover fees. U.S. District Courts for the Eastern and Western Districts of Arkansas have taken this factor into consideration and *still* awarded hourly rates more consistent with the rates proposed by Defendants in Section III(A)(2), *supra*.

Notably absent from Plaintiffs' Motion is any reference to a *Johnson* factor that would warrant reduction of the lodestar. For example, cases of first impression generally require more time and effort on the attorneys' part. *See Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974). As the Court is aware, an FLSA case seeking unpaid wages due to employee misclassification is hardly a novel issue, particularly for SLF. Similarly, *Johnson* endorses consideration of the amount of damages and backpay awarded. *See id.* As explained in Section III(B), *supra*, the award in this case was a small fraction of the estimated pre-trial recovery expectations of Plaintiffs (and SLF).

To the extent any further deviation from the lodestar is warranted, that deviation should be downward. Plaintiffs' arguments for an *upward* deviation are inapposite, from court outside of the local bar (and outside of the Eighth Circuit), and misinterpretation of the opinions cited.

Accordingly, Defendants contend that, after consideration of the *Johnson* factors, another 15% reduction in SLF's fee request is appropriate.

**D.     Costs**

Defendants do not object to paying the costs sought in Plaintiffs' Motion.

**V.     CONCLUSION**

Given the facts of this case, the requested attorneys' fees sought by Plaintiffs must be reduced. This Court has discretion in determining a reasonable attorney fee that will attract competent legal counsel but not result in a windfall to attorneys for work beyond that which was reasonably expended or necessary to achieve an appropriate result for Plaintiff. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983)). Therefore, Defendants respectfully request that the Court grant in part and deny in part Plaintiffs' Motion for Costs and Attorneys' Fees pursuant to the foregoing arguments and relevant authorities, and for all other relief to which they are entitled.

Respectfully submitted,

Alexander D. Clark, Ark. Bar No. 2017112
**ROSE LAW FIRM, A PROFESSIONAL ASSOCIATION**
120 East Fourth Street
Little Rock, AR 72201
Phone: (501) 375-9131
Fax: (501) 375-1309
Email: aclark@roselawfirm.com

**ATTORNEYS FOR DEFENDANTS**